AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF Massachusetts

UNITED STATES OF AMERICA

V.

MIGUEL LOZADA

**CRIMINAL COMPLAINT**

CASE NUMBER: 05mj631 KPN

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May 30, 2005 in Hampden county, in the District of Massachusetts defendant(s) did, (Track Statutory Language of Offense) possess a firearm while a convicted felon

in violation of Title 18 United States Code, Section(s) 922g1

I further state that I am a(n) Special Agents of the FBI and that this complaint is based on the following
Official Title
facts:

Please see attached Affidavit.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

June 14, 2005                                                at            Springfield, Massachusetts
Date                                                                                  City and State

Kenneth P. Neiman
United States Magistrate Judge                              _____
Name & Title of Judicial Officer                                 Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

Hampden, ss.                                          Springfield,
Massachusetts
                                                      June 15, 2005


**AFFIDAVIT OF SPECIAL AGENT MARK S. KARANGEKIS**


I, Mark S. Karangekis, being duly sworn, depose and state as follows:

1. I have been employed by the FBI for over thirteen (13) years. During that time, I have been involved in dozens of investigations relating to a wide variety of suspected criminal activity, including, among other things, drug and firearm trafficking by organized street gangs, to include the Latin Kings. I have been the affiant on numerous affidavits in support of criminal complaints and other applications and have spent much of the last eight years investigating gangs and gang-related activity in the Commonwealth of Massachusetts.

2. I am submitting this affidavit in support of an application for a criminal complaint charging Miguel Lozada, ("LOZADA") with being a Felon in Possession of a Firearm, in violation of Title 18 U.S.C. 922 (g). In light of the limited purpose for which this affidavit is being submitted, I have not included each and every fact known to me concerning the government's investigation of LOZADA. The information contained in this affidavit is based on my personal involvement in this investigation, my training and experience, my review of documents, surveillance, and information provided to me by other law enforcement officers.

3. For nearly three years, I have been the lead agent for

a multi-agency investigation of the criminal activities of members and leaders of the Massachusetts's chapter of the Almighty Latin King Queen Nation (here in after "Latin Kings"). Since the beginning of the investigation in late 2002, law enforcement agents have successfully made numerous purchases of controlled substances or firearms from Latin King members or associates using various confidential informants and cooperating witnesses. To date, this investigation has resulted in the indictment of 50 individuals on a variety of federal drug trafficking and firearms charges.

4. At the conclusion of the most recent phase of the referenced investigation, a Cooperating Witness ("CW") made a controlled purchase of a .357 Magnum Ruger revolver bearing serial number: 160-93889 from LOZADA. LOZADA, AKA KING DEMON, is believed to be a member of the Springfield Chapter of the Latin Kings. This cooperating witness has made more than twenty controlled purchases of contraband - either controlled substances or firearms - in the past year. Most of these controlled purchases have been corroborated by the FBI through a video recording, an audio recording, or surveillance.

5. On May 30, 2005, the CW met with me and Special Federal Officer (SFO) Frank Ott[1], and provided the following information: On May 25, 2005, while at 258 Locust Street, Apt. 3R in the city of Springfield, Massachusetts, the CW observed LOZADA in

---

[1] Ott is a Sergeant in the Hampden County Sheriff's Department.

2

possession of the firearm described above in ¶ 4. The CW asked LOZADA if he was interested in selling the firearm, and LOZADA indicated that he was not, but he indicated he would sell the CW a "sawed-off" shotgun.

6. On May 30, 2005, at approximately 1:00 pm, the CW, in my presence, made a telephone call to 413/636-2874, a number provided to the CW by LOZADA on May 25, 2005. The CW spoke with an individual he identified as LOZADA regarding the purchase of both the above referenced Ruger revolver, and the "sawed off" shotgun. The CW and LOZADA negotiated the price of the weapons for a short period of time, and then agreed to meet at 258 Locust Street to complete the sale.

7. At approximately 1:15 pm, the CW's person and vehicle were searched for money and contraband with negative results. The CW was provided with a body recorder, which records both audio and video, a transmitter, and $600.00 in official agency funds (OAF). At the same time, surveillance officers initiated a physical surveillance of 258 Locust Street.

8. The CW was surveilled to 258 Locust Street by the Affiant and SFO OTT, and was observed arriving at that location at approximately 1:53 PM. The CW remained in his/her vehicle. A moment later, LOZADA was observed leaving 258 Locust Street and entering the CW's vehicle. The CW and LOZADA were surveilled to 174 Bloomfield Street in the city of Springfield, where the two were observed exiting the vehicle and entering the residence. I, and other surveillance officers, then overheard the CW and

3

LOZADA involved in a conversation which was consistent with the purchase of a firearm. Furthermore, I and other surveillance officers overheard LOZADA boasting about having shot someone on Bloomfield Street, and reading from a newspaper article about the shooting.

9. The CW had telephonic contact with me while in the residence, indicating that LOZADA was in possession of the firearm, and that they were leaving within minutes and proceeding to a second location to obtain the "sawed off" shotgun. A few moments later, LOZADA and the CW were observed leaving the residence. LOZADA had in his possession a white plastic bag, which he placed in the trunk of the CW's vehicle.

10: The CW and LOZADA were then surveilled to 197 Dickenson Street in the city of Springfield. The CW and LOZADA were observed entering that location, and several minutes later were observed exiting that residence, and meeting a third party. The third party was observed placing a white plastic bag in the trunk of the CW's vehicle. The Individual and LOZADA were then surveilled back to 258 Locust Street, where LOZADA was observed exiting the CW's vehicle, and re-entering 258 Locust Street. The CW was surveilled back to a pre-determined meeting location.

11. The CW provided me with the above referenced body recorder and transmitter, and advised that there were two white plastic bags in the trunk of his/her vehicle, each of which contained the Ruger revolver and the "sawed off" shotgun. Task Force Officers then removed the referenced plastic bags and found

4

one to contain the referenced Ruger revolver, along with ammunition, and the other to contain a Savage Series K 20 gauge shotgun bearing Serial Number: A468528. The barrel of the shotgun appeared to be cut shorter by hacksaw or other cutting implement.

12. The CW provided the following information to the Affiant an SFO OTT. The CW picked up LOZADA at 258 Locust Street, and drove him to 174 Bloomfield Street, where the two proceeded to the second floor apartment. LOZADA retrieved the above referenced Ruger revolver from a hiding location after being advised by parties he identified as his cousin and brother of the location in which it was hidden. LOZADA took the weapon, opened it's cylinder, and removed six empty shell casings. LOZADA then wiped the weapon down, and placed it in the above referenced white plastic bag. LOZADA proceeded to flush the referenced shell casings down the toilet. LOZADA then took out a 9 mm semiautomatic pistol and wiped it down.

13. Prior to leaving, LOZADA read the CW a newspaper article which reported the shooting of a person on Bloomfield Street in Springfield. LOZADA told the CW that the shooting referenced in the article was the shooting he committed and boasted about in the car ride from Locust Street to Bloomfield St. The CW provided LOZADA with $200.00 in OAF for the Ruger revolver.

14. The CW advised that LOZADA and he exited the house. LOZADA was carrying the Ruger revolver in a white bag, and placed

5

the white bag in the trunk of the CW's vehicle. The CW and LOZADA then proceeded to 197 Dickenson Street, and met with B-BOY, an associate of LOZADA's. LOZADA retrieved the above referenced above shotgun from that residence, and showed the CW that it was operational by working its action. The Individual then provided LOZADA with $400.00 in OAF. LOZADA asked B-BOY to take the weapon out the back way, and to meet he and the CW at the CW's vehicle. B-BOY did so, and placed the gun into the CW's vehicle trunk. The CW returned to 258 Locust Street, and dropped off LOZADA. LOZADA entered the residence.

15. A review of the audio/video recording confirmed that the party who accompanied the CW to 174 Bloomfield Street was MIGUEL LOZADA. LOZADA appears on the referenced video holding the Ruger revolver referenced above, along with a second weapon (appears to be a semi-automatic pistol), wiping both down.

16. On June 9, 2005, the Affiant contacted Special Agent (SA) Angelo Thurman, Boston Office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and requested information on the referenced .357 Ruger revolver. SA Thurman advised that the Ruger revolver in question was not manufactured in Massachusetts, and would had to have traveled interstate before being possessed by LOZADA.

17. On June 9, 2005, I queried LOZADA's criminal history and determined that LOZADA was a convicted felon.

18. On June 9, 2005, I was able to determine that MIGUEL LOZADA's does not possess a license to carry a firearm.

6

19. Based on the information provided above, I believe that there is probable cause to believe that MIGUEL LOZADA did possess the above referenced .357 Magnum revolver in violation of Title 18 U.S.C. 922(g)(1).

MARK S. KARANGEKIS
Special Agent, FBI

Sworn to and subscribed before me this 14th day of June, 2005.

KENNETH P. NEIMAN
United States Magistrate Judge